## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

KEVIN L. CONLEY,                    :

     Plaintiff,                    :

                                   Case No. 3:13cv00165

vs.                                 :

                                   District Judge Walter Herbert Rice

CAROLYN W. COLVIN,                  :      Chief Magistrate Judge Sharon L. Ovington
Acting Commissioner of the Social
Security Administration,            :

     Defendant.                    :

## REPORT AND RECOMMENDATIONS[1]

I.    <u>Introduction</u>

     The Social Security Administration denied Plaintiff Kevin L. Conley's July 2009 applications for Disability Insurance Benefits and Supplemental Security Income based on the main conclusion that he was not under a benefits-qualifying "disability."  He brings the present case challenging those denials and seeking a reversal and remand to the Social Security Administration for payment of benefits.  He alternatively seeks a remand for further proceedings. The Commissioner seeks an Order affirming the administrative denial of Plaintiff's July 2009 applications for benefits.

---

[1] Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendations.

In 2009, Plaintiff suffered a stroke event or a transient ischemic attack (TIA).[2]  In a Disability Report submitted to the Social Security Administration, Plaintiff indicated that he is unable to work in part because of "[s]troke and hypertension," and he noted that he has really bad headaches, cannot lift anything, cannot be around a lot of stress, and is "very weak." (Doc. #6, PageID at 246). In December 2009, Plaintiff began receiving outpatient mental-health treatment. He was diagnosed with major depressive disorder, recurrent, severe with psychotic features. *Id*., PageID at 436.

## II.    "Disability" Defined

To be eligible for Disability Insurance Benefits or Supplemental Security Income a claimant must (among other requirements) be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §§423(a), (d), 1382c(a). "Disability" is defined essentially the same for both types of benefits. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986). A "disability" consists only of physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies.[3] *See Bowen*, 476 U.S. at 469-70.

---

[2]  A TIA "occurs when the blood supply to part of the brain is briefly interrupted. TIA symptoms, which usually occur suddenly, are similar to those of stroke but do not last as long...." http://www.ninds.nih.gov (search for Transient Ischemic Attack in the Disorders A-Z database).

[3]  The impairment must also be one "which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§423, 1382c(a)(3).

### III.    **Factual Background**

Over the years, Plaintiff worked various jobs as a cook, dishwasher, janitor, or warehouse worker. He has not worked since his last employer terminated his employment as a cook and dishwasher in 2006. (Doc. #6, PageID at 116-18). He completed the eleventh grade in high school, has not received specialized job training, and has not attended trade or vocational school.  *Id.*, PageID at 251.

In his applications for benefits, Plaintiff asserted that his disability began on April 5, 2009. On that date, when Plaintiff was 51 years old, he suffered "some type of stroke event ...." (Doc. #6, PageID at 114). During his testimony before Administrative Law Judge (ALJ) Paul R. Armstrong, Plaintiff explained that when he was four months old, doctors "split his skull" open. (Doc. #6, PageID at 130). He was told this was necessary because his "skull was closing too quickly over [his] brain ...." *Id.*

Plaintiff also testified during the ALJ's hearing that after his stroke event, he started hearing voices and seeing things. *Id.*, PageID at 131, 133. He explained that the voices come from his head, and "[t]hey want me to go out and kill someone or just hurt somebody or just get rid of myself." *Id.*, PageID at 119. He realized he needed help and so he entered treatment at Day-Mont West.  *Id.*, PageID at 133. He also stopped drinking alcohol and smoking cigarettes at that time.  He also informed the ALJ that he "can't focus constantly all the time. [H]e can't concentrate on what [he's] doing...," he blacks out and forgets what he is doing. *Id.*, PageID at 124.

3

The evidence in the administrative record includes Plaintiff's medical files and opinions provided by Plaintiff's treating physician, Dr. Desai, and his treating psychiatrist Dr. Patel. Dr. Desai reported in May 2009 that Plaintiff's physical problems included hypertension and a history of TIA. Dr. Desai estimated that Plaintiff could stand/walk for two hours in an eight-hour workday; he could lift no more than five pounds frequently or occasionally; and he was moderately limited in pushing/pulling, bending, reaching, and handling. Dr. Desai believed that Plaintiff was unemployable for 12 months or more. (Doc. #6, PageID at 369).

Psychiatrist Dr. Patel began treating Plaintiff in April 2010. In March 2011, Dr. Patel reported that he treated Plaintiff for depression with suicidal ideation and attempts; anxiety/anger and frustration (he easily becomes frustrated); voices telling him to kill himself; and paranoia. Dr. Patel noted many difficulties and limitations on Plaintiff's mental-work abilities, including, for example: (1) he has trouble concentrating and has decreased motivation, and as a result, he would not be prompt and regular in work attendance; (2) he has trouble dealing with people, leaving him unable to appropriately respond to supervisors, co-workers, and customary work pressures; and (3) he has difficulty tolerating stress and low frustration tolerance, making him unable to meet normal standards of work productivity. (Doc. #6, PageID at 565-66). In the end, Dr. Patel concluded that Plaintiff was "unlikely to be employed again in gainful employment." *Id*., PageID at 571.

The administrative record also contains opinions provided by Dr. Payne in September 2009. Dr. Payne examined Plaintiff one time at the request of the Ohio Bureau of Disability

Determinations. Plaintiff reported to Dr. Payne that he had undergone "head surgery at age four months because '[his] brain was growing too fast.'" (Doc. #6, PageID at 393). Plaintiff told Dr. Payne that he had headaches and dizziness; hypertension; left side weakness; his back gives out; his legs, especially his right leg, tended to give out; and pain on the left side of his body. *Id*. Plaintiff also told Dr. Payne, "I think I had a stroke." *Id*. Dr. Payne noted that Plaintiff was hospitalized from February 5, 2009 until February 8, 2009. *Id*.

Dr. Payne reported, "There were no indications that [Plaintiff] was experiencing a thought disorder such as delusions, hallucinations, or paranoia. He appeared to be free of obsessions, compulsions, and dissociative experiences. He is not experiencing recollections of or intrusive thoughts about previous traumatic events." *Id*., PageID at 394.  Dr. Payne also reported, in part:

> [Plaintiff] is frustrated, and case material would suggest a history of difficulty coping with stress. He has usually been active and independent, and now he feels inactive and dependent. He doesn't cry in public, but says he sometimes cries in private. He admits to easy irritability. He says he doesn't get as angry as he used to. Sometimes he feels as if he has no energy. He does not feel like going anywhere, and he says he has been in the house for the whole month. His sister-in-law helps him by running errands for him (e.g. prescriptions). He has anhedonia. He says he won't try suicide due to his grandchildren....

*Id*.

In his summary, Dr. Payne wrote:

> [Plaintiff] was present for an adult clinical interview .... He appears to have borderline range intelligence. He has a history of alcohol dependence, and he believes he used alcohol as an escape.  In addition, he used marijuana and crack cocaine. He reports he is not using any substances at this time.

(Doc. #6, PageID at 395). Dr. Payne diagnosed Plaintiff with depressive disorder (not otherwise specified); alcohol, cannabis, and cocaine abuse in reported sustained remission; and borderline intelligence. *Id*., PageID at 396. He opined that Plaintiff would be moderately impaired in his ability to relate to others including coworkers and supervisors due to his depressive disorder; he would be mildly impaired in his ability to understand and follow through on moderately complex task-related instructions due to borderline intelligence; he would be mildly impaired in his concentration and attention due to his depressive disorder; he would be mildly impaired if his work stress level was low; and he would be moderately impaired if his work stress was high. *Id*.

In October 2010, nontreating and nonexamining psychologist Dr. Johnson reviewed the record and completed two forms:  a mental Residual Functional Capacity assessment[4] and a psychiatric review technique. She recognized Plaintiff's diagnosis of depressive disorder (not otherwise specified) and borderline intellectual functioning. (Doc. #6, PageID at 404-05). She concluded, in part:

> With continued abstinence from drugs and alcohol, this claimant retains the ability to understand, recall, and carry out instructions for simple repetitive tasks. He would work best if instructions are given orally or briefly demonstrated. He can adapt to a setting which is not fast paced and where there are not strict production demands. He can relate to others infrequently and superficially.

(Doc. #6, PageID at 399).

---

[4] Residual Functional Capacity is the most a person can do, not the least, after considering the existing physical and mental limitations. *See* 20 C.F.R. § 404.1545(a); *see also* Social Security Ruling 96–8p, 1996WL 374184.

Dr. Johnson opined that Plaintiff had mild restrictions in his activities of daily living and moderate difficulties in maintaining social functioning, concentration, persistence, or pace. Dr. Johnson saw no episodes of extended-duration decompensation. *Id*., PageID at 411. In May 2010, nontreating, nonexamining psychologist Dr. Rudy affirmed Dr. Johnson's assessment. *Id*., PageID at 466.

In early November 2009, Dr. McCloud, a nontreating, nonexamining physician, reviewed the administrative record. He concluded that Plaintiff was able to occasionally lift up to 50 pounds; frequently lift up to 25 pounds; stand and/or walk, and sit about 6 hours in an 8-hour workday. *Id*., PageID at 416. As to Plaintiff's credibility, Dr. McCloud reported that Plaintiff's symptoms were attributable to a medically determinable impairment, and that the severity and duration of Plaintiff's symptoms were not "disproportionate to the expected severity or expected duration ..." of his symptoms. *Id*., PageID at 420. Dr. McCloud further wrote:

> Clt [Plaintiff] reported not being able to lift very much weight but does no [sic; presumably, "not"] explain why. Clt reports other pain in [his] back and legs but there is no medical evidence to support these symptoms. Clt describes headaches as well as numbness in [his] face. Clt's statements are only partially credible due to the fact that clt has not reported these symptoms to doctors and are no [sic; presumably, "not"] supported by the objective medical evidence.

(Doc. #6, PageID at 420).

On April 22, 2010, nontreating, nonexamining, physician Dr. Toro reviewed the record. He concluded, "there is a history of left cerebral TIA that cleared completely by the time of

admission and head CT evidence of small vessel disease without sequelae.[5] There is no evidence that his headaches have worsened. Both are non-severe. I concur with Dr. McCloud['s] assessment of 11/3/01." *Id*., PageID at 464 (footnote added).

On April 26, 2010, Dr. Steinberg reviewed the administrative record in April 2010 and concurred with Dr. McCloud's assessment. *Id*., PageID at 465.

## IV.    Administrative Review

ALJ Armstrong reviewed the evidence and resolved Plaintiff's disability status under the governing five-Step sequential evaluation. *See* 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4);[6] *see also Wilson v. Comm'r of Social Sec*., 378 F.3d 541, 543 (6th Cir. 2004). The ALJ concluded the following at each step of his evaluation:

Step One:      Plaintiff has not engaged in substantial gainful activity since April 5, 2009, his alleged disability onset date.

Step Two:      Plaintiff has the severe impairments of "residuals of transient ischemic attack ... and affective disorder."

Step Three:    Plaintiff does not have an impairment or combination of impairments that meet or equal one of the Commissioner's Listing of Impairments.

Step Four:     Plaintiff has the Residual Functional Capacity "to perform simple,

_____

[5] "Sequela" ("sequelae," plural) refers to a "condition following or resulting from a disease." Taber's Cyclopedic Medical Dictionary at 1873 (19th Ed. 2001).

[6] The remaining citations to pertinent Disability-Insurance-Benefits Regulations incorporate the corresponding Supplemental Security Income Regulations without separately identifying them.

8

unskilled ... medium work[7] ... except the claimant is incapable of performing work requiring more than superficial contact with supervisors, coworkers, and the general public.

Plaintiff was unable to perform any of his past relevant work.

Step Five: Plaintiff was capable of performing as many as 25,000 regional jobs at his limited medium level of exertion such as a laundry folder, machine tender, warehouse checker, and assembler.

(Doc. #6, PageID at 102).

The ALJ's findings throughout his sequential evaluation led him to ultimately conclude that Plaintiff was not under a disability and, therefore, was not eligible to receive Disability Insurance Benefits or Supplemental Security Income.

## V.   **Judicial Review**

The Social Security Administration determines whether a claimant is under a disability and eligible for benefits. 42 U.S.C. §§405(b)(1), (h). Its administrative determination of disability – typically embodied in an ALJ's written decision – is subject to review in this Court along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Social Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *see Bowen v. Comm'r. of Social Sec.*, 478 F3d 742, 745-46 (6th Cir. 2007). Reviewing the ALJ's legal criteria for correctness may result in reversal even if the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r*

---

[7] Social Security Regulations describe "medium work" to involve "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds...." 20 C.F.R. §404.1567(c).

*of Social Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F3d at 746.

The substantial-evidence review does not ask whether the Court agrees or disagrees with the ALJ's factual findings or whether the administrative record contains evidence contrary to those factual findings. *Rogers v. Comm'r of Social Sec.*, 486 F.3d 234, 241 (6th Cir. 2007); *see Her v. Comm'r of Social. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met – that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 406 (quoting *Warner v. Comm'r of Social Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance..." *Rogers*, 486 F.3d at 241.

## VI.  Discussion

### A.  Medical Source Opinions

#### 1.

Plaintiff contends that the ALJ failed to follow the procedural requirements of the Regulations and, as a result, failed to properly weigh the opinions of his treating medical sources, namely Drs. Desai and Patel.  Plaintiff reasons that the ALJ erred by placing little weight on the well-supported opinions of Drs. Desai and Patel while placing considerable weight on the opinions of Drs. McCloud, Toro, and Steinberg, who were nontreating and nonexamining medical sources.

10

The Commissioner contends that the ALJ properly weighed the opinions of Drs. Desai and Patel as the Social Security Regulations require.  The Commissioner further contends that substantial evidence – including clinical and diagnostic medical evidence – supports the ALJ's findings.

**2.**

Social security regulations recognize several different categories of medical sources: treating physicians, nontreating yet examining physicians, and nontreating record-reviewing physicians. *Gayheart v. Comm'r Social Sec*., 710 F.3d 365, 375 (6th Cir. 2013).

> As a general matter, an opinion from a medical source who has examined a claimant is given more weight than that from a source who has not performed an examination (a "nonexamining source"), and an opinion from a medical source who regularly treats the claimant (a "treating source") is afforded more weight than that from a source who has examined the claimant but does not have an ongoing treatment relationship (a "nontreating source"). In other words, "[t]he regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker." Soc. Sec. Rul. No. 96–6p, 1996 WL 374180, at *2 (Soc. Sec. Admin. July 2, 1996).

*Gayheart*, 710 F.3d at 375 (citing 20 C.F.R. §§ 404.1502, 404.1527(c)(1), (d) (eff. April 1, 2012)).

A treating source's opinion is given controlling weight under the treating-physician rule if it is both well supported by medically acceptable data and not inconsistent with other substantial evidence of record. *Gayheart*, 710 F.3d  at 376; *see* 20 C.F.R. §404.1527(d)(2) (eff. April 1, 2011); Social Security Ruling 96-2P, 1996 WL 374188 at *1 (July 2, 1996).  "If the Commissioner does not give a treating-source opinion controlling weight, then the opinion is

weighed based on the length, frequency, nature, and extent of the treatment relationship, as well as the treating source's area of specialty and the degree to which the opinion is consistent with the record as a whole and is supported by relevant evidence." *Gayheart*, 710 F.3d at 376 (citing 20 C.F.R. § 404.1527(c)(2)-(6) (eff. April 1, 2012)).

Unlike treating physicians, "opinions from nontreating and nonexamining sources are never assessed for 'controlling weight.' The Commissioner instead weighs these opinions based on the examining relationship (or lack thereof), specialization, consistency, and supportability, but only if a treating-source opinion is not deemed controlling. Other facts 'which tend to support or contradict the opinion' may be considered in assessing any type of medical opinion." *Id.* (citing 20 C.F.R. §404.1527(c)(6) (eff. April 1, 2012)).

**3.**

ALJ Armstrong gave "little weight" to the opinions of Drs. Desai and Patel for the following initial reason:

> First, the determination of whether a claimant is disabled (or otherwise restricted in her ability to work) is reserved for the Commissioner..., not examining professionals. Statements that a claimant is disabled or unable to work are not medical opinions but are dispositive administrative findings requiring familiarity with the Regulations and the legal standards set forth therein. Such decisions are reserved to the Commissioner, who cannot abdicate his statutory responsibility to determine the ultimate issue of disability.

(Doc. #6, PageID at 99). This paragraph essentially reiterates a Regulation that characterizes the Social Security Administration's disability determination as an administrative finding, not a medical opinion. 20 C.F.R. §404.1527(e)(1). It also reflects the Regulation's explanation that

a "statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled." *Id*. But, contrary to the ALJ's first reason for rejecting Plaintiff's treating sources' opinions, this Regulation does not state that a treating source's opinion may be discounted or rejected merely because he or she states that the claimant is unable to work or disabled.  Similarly, the Regulation's list of factors (consistency, supportability, specialization, etc.) applicable to evaluating medical-source opinions do not require or suggest that an ALJ may reject a medical opinion on specific work abilities (e.g., lifting, walking, sitting, getting along with others, etc.) simply because the medical professional also offered a conclusion about a claimant's disability status. *See* 20 C.F.R. §404.1527(d)(1)-(6). At best for the Commissioner, the Regulations allow an ALJ to consider "the amount of understanding of our [the Social Security Administration's] disability programs and their evidentiary requirements ...." *Id*., §404.1527(d)(6). Yet this is not what the ALJ did here.  Instead, the ALJ's first reason for placing little weight on Dr. Desai's and Dr. Patel's opinions was that they opined Plaintiff was unable to work. (Doc. #6, PageID at 99).  Facing a similar ALJ's decision, one Court of Appeals has explained the following:

> The [ALJ's] ground [for rejecting a treating source opinion] was that determining disability is reserved for the Commissioner of Social Security (by which the administrative law judge meant reserved to him). That isn't true. What is true is that whether the applicant is sufficiently disabled to qualify for social security disability benefits is a question of law that can't be answered by a physician. But the answer to the question depends on the applicant's physical and mental ability to work full time, and that is something to which medical testimony is relevant and if presented can't be ignored.

*Garcia v. Colvin*, 741 F.3d 758, 760 (7th Cir. 2013) (citing *Ferguson v. Social Security*, 628

F.3d 269, 272-73 (6th Cir. 2010) (other citation omitted)).  In *Ferguson*, the Sixth Circuit

Court of Appeals explained, "even though some issues, such as whether an individual is

'disabled,' are case-dispositive administrative issues reserved to the Commissioner,

'adjudicators must always carefully consider medical source opinions about any issue,

including opinions about issues that are reserved to the Commissioner.'" 628 F.3d at 272

(quoting, in part, Social Security Ruling 96-5p, 1996 WL 374183 at *2 (July 2, 1996)). Thus,

to the extent the ALJ gave little weight to the opinions of Drs. Desai and Patel because each

offered the opinion that Plaintiff was disabled or unable to work, the ALJ's analysis strayed

too far from the applicable standards described in §404.1527(d)(1)-(6) and, in doing so, erred.

The ALJ's error does not by itself doom his decision because he provided additional

reasons for discounting Dr. Desai's opinions.  The ALJ explained:

> Second, Dr. Desai's and Dr. Patel's conclusions go beyond what is
> established by the claimant's clinical evidence.... Turning first to Dr. Desai's
> May 2009 medical source statement, although he references the claimant's
> history of TIA and hypertension, the totality of the claimant's clinical evidence
> does not support Dr. Desai's view of the claimant's level of functioning....

(Doc. #6, PageID at 99-100). The ALJ discounted Dr. Patel's opinions due to the "disparity

between the claimant's clinical findings and observations and Dr. Pate's conclusions ...." *Id*.,

PageID at 100. The ALJ reasoned:

> While Dr. Patel referenced the claimant's impairment and symptoms
> (such as depression, paranoia, and occasional hallucinations), he has not
> referenced clinical findings in this questionnaire that support the extent of his
> conclusions....
>
> In sum, the medical source statements submitted by Dr. Patel and Dr.

14

Desai neither address the totality of the claimant's clinical evidence, nor do they produce objective clinical findings that illustrate that the claimant's functional capacity has deteriorated in a manner consistent with their conclusions. Given that the medical source statements submitted by Dr. Patel and Dr. Desai do not contain findings that demonstrate that the claimant's functional capacity has deteriorated to such an extent that he is disabled from sustaining all forms of work, it remains unclear whether their conclusions are based upon the totality of the claimant's evidence or merely the claimant's subjective complaints.

*Id.*, PageID at 100-01.

Plaintiff correctly argues that the ALJ's rejection of the treating medical sources' opinions as unsupported by "the totality of the claimant's clinical evidence ...," constitutes error. The Regulations do not require that a treating medical source's opinions be supported or consistent with <u>all</u> the medical evidence on file. The Regulations instead required the ALJ to consider the factors listed and described in 20 C.F.R. §404.1527(d)(1)-(6). In addition, the Social Security Ruling explaining how ALJs will evaluate treating medical-source opinions does not require or suggest that ALJs should discount those opinions when the totality of medical evidence fails to support them. *See* Social Security Ruling 96-2P, 1996 WL 374188 (July 2, 1996). What is required under the treating physician rule is that ALJs first consider whether "the opinion is well supported by medically acceptable clinical well support and not inconsistent with other substantial evidence in the case record"; if the opinion meet this criteria, ALJs must give it "controlling weight; i.e., it must be adopted." *Id.*, PageID at *1; *see Gayheart*, 710 F.3d at 376. Moreover, "[f]or a medical opinion to be well-supported by medically acceptable clinical and laboratory diagnostic techniques, it is not necessary that the opinion be fully supported by such evidence." Soc. Sec. Ruling, 96-2p, 1996 WL 374188 at

15

*2. The ALJ therefore erred by imposing a totality-of-evidence requirement on Dr. Desai's and Dr. Patel's opinions.

The Commissioner points out that the record contains evidence supporting the ALJ's decision to reject the opinions of Drs. Desai and Patel. Yet, the Commissioner's evidence, *see* Doc. #11, PageID at 663-69, even if it amounts to substantial evidence, does not eliminate the ALJ's two errors of law: (1) rejecting treating source opinions first because disability determinations are reserved to the ALJ/Commissioner under the Regulation; and (2) imposing an incorrect and higher totality-of-evidence requirement than the legal criteria described in the Regulations. "An ALJ's failure to follow agency rules and regulations 'denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record.'" *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011) (quoting, in part, *Blakley v. Comm'r of Soc. Sec.,* 581 F.3d 399, 407 (6th Cir. 2009)). The ALJ's errors, moreover, were not harmless especially as to Dr. Patel who provided significant reasons in support of his opinions. *See* Doc. #6, PageId at 565-70. Over nearly two years, Plaintiff's mental-health records report time and again that he had depression (severely, on at least one occasion) and was irritable (with "building resentments"), angry (with "angry outbursts"), agitated, lacked healthy coping skills, fatigued, felt emotionally numb, and lacked enthusiasm (with "anhedonia"). (Doc. #6, PageID at 427-48, 453-63, 612-27). The consistency of these symptoms over an extended period of time tended to support Dr. Patel's opinions about Plaintiff's mental work abilities. And, neither Dr. Patel's nor Dr. Desai's opinions were "so

16

patently deficient that the Commissioner could not possibly credit ..." them. *Wilson*, 578 F.3d at 547. As a result, the ALJ's errors were not harmless. *See id*. at 546 ("'[A] procedural error is not made harmless simply because [the aggrieved party] appears to have had little chance of success on the merits anyway.'").

The ALJ also relied on the opinions of non-treating medical sources (Drs. Payne, Johnson, McCloud, Toro, Steinberg, and Rudy) when assessing Plaintiff's Residual Functional Capacity. In doing so, the ALJ described their reports at length but merely explained that he found their opinions "persuasive because they are well-supported by the evidence currently contained in the claimant's record." (Doc. #6, PageID at 95-95). In general, the ALJ is not required to address each regulatory factor when assessing medical source opinions. *See Francis v Comm'r Social Sec.*, 414 Fed. App'x 802, 804 (6th Cir. 2011). The ALJ's conclusory, one-reason acceptance of the non-treating medical sources' opinions fails to sufficiently indicate that the ALJ weighed their opinions under any of the remaining regulatory factors. The Regulations required the ALJ to weigh the opinions of one-time examining physicians and record-reviewing physicians under the regulatory factors, appearing to emphasize this requirement by reiterating it several times and by applying it to ALJs, initial disability examiners, and the Appeals Counsel. *See* 20 C.F.R. §404.1527(d) ("we consider all of the following factors in deciding the weight to give any medical opinion...."); *see also* 20 C.F.R. §404.1527(f)(1)(ii) (factors apply to opinions of state agency medical consultants); 20 C.F.R. §404.1527(f)(1)(iii) (same as to state agency disability examiners); 20 C.F.R.

17

§404.1527(f)(1)(3)(same as to the Appeals Council). The Regulations, moreover, specifically promise, "When an administrate law judge considers findings of a State agency medical or psychological consultant, or other program physician psychologist, or other medical specialist, the administrative law judge will evaluate the findings using the relevant factors...," including supportability, consistency, and specialization. 20 C.F.R. §404.1527(f)(2)(ii). Similarly, the ALJ's single-reason acceptance of the non-treating medical sources' opinions is inconsistent with the Commissioner's Ruling 96-6p, which states, in part, "The regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker. For example, the opinions of physicians or psychologists who do not have a treatment relationship with the individual are weighed by stricter standards, based to a greater degree on medical evidence, qualifications, and explanations for the opinions, than are required of treating sources." 1996 WL 374180 at *2. This progression is not reflected in the ALJ's "well-supported" finding as a basis to accept the cursory opinions provided by Dr. Rudy, Dr. Toro, and Dr. Steinberg, each a nontreating medical source. (Doc. #6, PageID at 95-96, 464-66). Although not cursory, Dr. McCloud's opinion was based on a review of the record at a time when it contained no medical source statements regarding Plaintiff's physical abilities, a fact the ALJ overlooked or ignored when crediting this physician's opinions. *See id*., PageID at 95-96, 421.

### B.    Remand is Warranted

If the ALJ failed to apply the correct legal standards or his factual conclusions are not

supported by substantial evidence, the Court must decide whether to remand the case for rehearing or to reverse and order an award of benefits. Under Sentence Four of 42 U.S.C. §405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Remand is appropriate if the ALJ applied an erroneous principle of law, failed to consider certain evidence, failed to consider the combined effect of impairments, or failed to make a credibility finding. *Faucher v. Secretary of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is not overwhelming and because the evidence of a disability is not strong while contrary evidence is weak. *See Faucher*, 17 F.3d at 176. Plaintiff, however, is entitled to an Order remanding this case to the Social Security Administration pursuant to Sentence Four of §405(g) due to problems set forth above. On remand the ALJ should be directed to (1) evaluate all the medical source opinions of record and Plaintiff's credibility under the legal criteria applicable under the Commissioner's Regulations and Rulings and as mandated by case law; and (2) review Plaintiff's disability claim under the required five-step sequential analysis to determine anew whether he was under a disability and thus eligible for DIB and/or SSI.

## IT IS THEREFORE RECOMMENDED THAT:

1. The Commissioner's non-disability finding be vacated;

2. No finding be made as to whether Plaintiff Kevin L. Conley was under a "disability" within the meaning of the Social Security Act;

19

3.     This case be remanded to the Commissioner and the Administrative Law Judge under Sentence Four of 42 U.S.C. §405(g) for further consideration consistent with this Report; and

4.     The case be terminated on the docket of this Court.


March 18, 2014

                                                    _____s/Sharon L. Ovington_____
                                                        Sharon L. Ovington
                                      Chief United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981).